**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*


| | | |
|---|---|---|
| **AMBER MAREE CANTER,** | * | |
| **(F/K/A CHARLES CANTER),** | | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: GJH-16-2545** |
| | | |
| **RICHARD SCHOPPERT,** *et al.*,[1] | * | |
| | | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Amber Maree Canter brought this civil action against officers and other personnel at the North Branch Correctional Facility ("NCBF") alleging battery, intentional infliction of emotional distress, excessive force and due process under the Maryland Declaration of Rights, and excessive force, deliberate indifference, retaliation, and failure to properly train and supervise pursuant to 42 U.S.C. § 1983. ECF No. 48. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 57.[2] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion is granted, in part, and denied, in part.

---

[1] The Clerk shall amend the docket to reflect the correct names and titles of Defendants Sergeant Richard Schoppert, Sergeant Chris Burton, Correctional Officer II Brian Barrett, Warden Frank Bishop, Assistant Warden Jeff Nines, Chief William Bohrer, Charlotte Zies, Correctional Officer II Jared Zais, Captain Gregory Werner, and Secretary Stephen R. Moyer.

[2] Also pending before the Court are three Motions to Strike the appearances of Assistant Attorney Generals Francis M. Curnette, III, and Stephanie Lane-Weber. ECF Nos. 64, 67, 75. These Motions are granted.

# I.     BACKGROUND[3]

## A.  Factual Background

Plaintiff is a transgender woman who, during the relevant period, was in the custody of Maryland Department of Public Safety and Correctional Services and housed at NBCF, a facility for male inmates, in Cumberland, Maryland. ECF No. 48 ¶ 1. At 4:00 a.m. on June 18, 2016, Plaintiff received her breakfast tray, but she noticed that it was not compliant with her medical diet of 2,400 calories per day. *Id.* ¶ 21. She asked Correctional Officers Crowe and Hill to call the dietary officer, but they declined. *Id.* ¶¶ 22, 23. Plaintiff then placed her tray into the feed-up slot to prevent it from closing and Officer Crowe ordered her to remove the tray. *Id.* ¶¶ 24, 25. She then demanded to see the Sergeant on duty, but Officer Crowe responded that a Sergeant "ain't gonna come down." *Id.* ¶¶ 26, 27.

Defendant Correctional Officer II Brian Barrett then dragged a security shield toward Plaintiff's cell. *Id.* ¶ 31. While Plaintiff's tray and hand were still in the feed-up slot, Defendant Barrett latched the shield onto the right side of the cell door, but he could not latch the shield to the left side because the sliding door for the feed-up slot was too far open. *Id.* ¶ 32. He became frustrated and angry and started to kick the shield. *Id.* ¶ 33. After he told Plaintiff to move her hand and tray and Plaintiff refused, Officer Barrett kicked the sliding door with extreme force several times, and Plaintiff's forearm, hand, and wrist were smashed between the feed-up slot door, tray, and door frame. *Id.* ¶¶ 34–36.

With her arm still caught in the feed-up slot, Plaintiff asked to see a lieutenant. *Id.* ¶ 37. Defendant Barrett responded, "you shouldn't have had your hand in the slot," and he smiled and

---

[3] Unless otherwise stated, the background facts are taken from Plaintiff's Second Amended Complaint, ECF No. 48, and are presumed to be true.

walked away. *Id.* ¶ 38. Plaintiff's left arm remained stuck for the next twenty minutes. *Id.* Officer

Hill then arrived and learned from inmate Derrick Dirton that "Barrett smashed Canter's hand in

the slot, [she] needs medical attention," but Officer Hill was unable to open to the sliding door to

free Plaintiff's arm. *Id.* ¶¶ 39–41. About thirty minutes later, Defendant Sergeant Richard

Schoppert, Defendant Barrett, and Officers Porter and Crowe arrived at Plaintiff's cell;

Defendant Barrett eventually opened the sliding door and Plaintiff removed her hand. *Id.* ¶¶ 42,

43. She requested medical attention, but Defendant Schoppert denied the request. *Id.* ¶¶ 47, 48.

At 7:00 a.m., Officer Timothy Marchanke obtained a statement from Plaintiff regarding

the incident, and that statement made its way to Lieutenant Bradley, who ordered that pictures be

taken of Plaintiff's injuries and that she be seen by a nurse. *Id.* ¶¶ 50, 51. Nurse Amy examined

Plaintiff's arm, determined that there was internal and external bruising, and provided Plaintiff

with an Ace bandage. *Id.* ¶¶ 53, 54.

On June 18, 2016, Plaintiff filed an Administrative Remedy Procedure ("ARP")

complaint about the incident. *Id.* ¶ 82. Four days later, Defendant Correctional Officer II Jared

Zais[4] came to Plaintiff's cell to ask what could be done about the complaint. *Id.* ¶ 56. Plaintiff

said there was nothing that could be done because she wanted the officers involved to be charged

with assault and neglect. *Id.* ¶ 57. Defendant Zais responded that he would process the ARP. *Id.*

On that same day, however, the ARP was dismissed because the Internal Investigations Unit

("IID") was investigating the incident. *Id.* ¶ 58. On June 25, 2016, Plaintiff was interviewed by

IID Sergeant Chris Burton; she provided affidavits from two inmates who observed the assault,

_____

[4] In the Second Amended Complaint, the individual who came to Plaintiff's cell is referred to as "Correctional
Sergeant Zies." This is likely a typo. Charlotte Zies, the Case Manager Specialist II, and Jared Zais, Correctional
Officer II, are both listed in the Complaint, ECF No. 48 ¶¶ 7, 8, but there is no "Correctional Sergeant Zies." Given
that Defendant Zais "was responsible for operations of the Administrative Grievance Department," *id.* ¶ 8, the Court
assumes that this is who Plaintiff is referring to in this portion of the Second Amended Complaint.

as well as a copy of the ARP, sick call slips, and request slips, and she asked Sergeant Burton to review the surveillance video of the incident. *Id.* ¶¶ 60–62. At the conclusion of the IID investigation, Sergeant Burton stated that he would present the case to the Allegany County State's Attorney's Office and that office would decide if criminal charges would be filed. *Id.* ¶ 66.

After filing her Complaint in the instant case, Plaintiff has been subject to various actions that she characterizes as retaliatory. *Id.* ¶ 69. For example, Defendant Case Manager II Charlotte Zies and Defendant Barrett arranged for another inmate, Walter Hall, to sabotage this action by filing a fraudulent voluntary dismissal of the case. *Id.* ¶ 70–73. When Plaintiff informed Defendant Zies of the fraudulent filing, she responded, "Oh well, you need to stop filing a lot of civil claims." *Id.* ¶ 73. Defendant Barrett also threatened to beat Plaintiff to death or spray her with mace if she did not "back off" her civil and criminal claims. *Id.* ¶ 74. On November 21, 2016, Defendants Bishop, Nines, and Borher directed that Plaintiff be placed on administrative segregation in order to force her to retract her claims. *Id.* ¶ 80–81. Plaintiff filed additional ARP complaints with respect to the alleged retaliation on August 5, August 7, August 9, August 15, August 20, August 21, August 30, and September 14 of 2016. *Id.* ¶ 85. All were denied, and all were appealed. *Id.*

### B. Procedural Background

Plaintiff filed a *pro se* Complaint in this Court on July 12, 2016 against Sergeant Chris Burton, Correctional Officer II Brian Barrett, and Sergeant Richard Schoppert. ECF No. 1. On August 17, 2016, the Court dismissed the case pursuant to a fraudulent filing by an individual claiming to be Plaintiff. ECF Nos. 6, 7. The Court reinstated the case on September 20, 2016. ECF No. 14. On October 4, 2016, Plaintiff filed a Motion to Force Defendants to Turn Over

Video Security Footage. ECF No. 15. On November 9, 2016, she filed an Amended Complaint, adding Warden Frank Bishop, Assistant Warden Jeff Nines, Chief William Bohrer, Charlotte Zies, Correctional Officer II Jared Zais, and Captain Gregory Werner as defendants. ECF No. 19. The Amended Complaint alleged Eighth Amendment claims of excessive force against Defendant Barrett and deliberate indifference to a medical need against Defendants Barrett and Schoppert, First Amendment claims of retaliation and access to court against Defendants Barrett and Zeis, and claims of *respondeat superior* against Defendants Bishop, Nines, Bohrer, Zais, and Werner. *Id.*

On February 14, 2017, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 33. At the time, Plaintiff's October 4, 2016 Motion to Force Defendants to Turn Over Video Security Footage was still pending; the Court interpreted it as a Rule 56(d) motion and granted it, determining that the video footage requested by Plaintiff was critical to the resolution of factual disputes in the case. ECF No. 38. Thus, the Court construed Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment as a Motion to Dismiss, which it granted, in part, and denied, in part, on September 22, 2017. ECF No. 39. The Court dismissed Plaintiff's claims against Defendants Bishop, Nines, Bohrer, Zais, and Werner on the grounds that *respondeat superior* does not apply to § 1983 claims. *Id.* It also granted the Motion to Dismiss as to the access to court claim, but it denied the Motion to Dismiss as to the excessive force, denial of medical treatment, and retaliation claims alleged against Defendants Barrett, Schoppert, and Zies. *Id.*

On April 16, 2018, the Court appointed Plaintiff pro bono counsel. ECF No. 43. On January 23, 2019, Plaintiff filed a Second Amended Complaint. ECF No. 48.[5] The Second Amended Complaint alleges claims of battery against Defendant Barrett ("Count I"), intentional infliction of emotional distress ("IIED") against Defendants Barrett, Schoppert, Zies, Bishop, Nines, and Bohrer[6] ("Count II"), excessive force and due process in violation of the Maryland Declaration of Rights against Defendants Barrett and Schoppert ("Count III"), excessive force in violation of the Eighth and Fourteenth Amendments against Defendant Barrett ("Count IV"), deliberate indifference against Defendants Barrett and Schoppert ("Count V"), retaliation against Defendants Barrett and Zies ("Count VI"), and failure to properly train and supervise against Defendants Bishop, Bohrer, and Moyer ("Count VII").

On April 17, 2019, Defendants filed a second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 57. The video footage that the Court ordered Defendants to turn over was filed with this Motion. ECF No. 57-2. Plaintiff filed an opposition, which included a motion under Rule 56(d), on June 24, 2019, ECF No. 63, and Defendants filed a reply on September 6, 2019, ECF No. 69.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[5] The Second Amended Complaint was initially rejected by the Clerk's Office because a redline copy was not filed. ECF No. 49. Plaintiff filed a Motion for Leave to File Amended Complaint Without a Redline on February 1, 2019, which the Court granted on April 17, 2019. ECF No. 58.

[6] The Second Amended Complaint states that Count II is against "All Defendants," but it only provides specific allegations against Defendants Barrett, Schoppert, Zies, Bishop, Nines, and Borher. Thus, the Court will dismiss Count II as it relates to Defendants Zais, Werner, and Secretary Stephen R. Moyer.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is

the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

## III.    DISCUSSION

### A.  Procedural Posture

As an initial matter, the Court must determine what standard of review to apply to Defendants' Motion. Defendants encourage the Court to construe their motion as a Motion for Summary Judgment and contend that Defendants' affidavits and the video footage provided undoubtedly resolve any material factual disputes in their favor and show that they are entitled to judgment as a matter of law. In opposition, Plaintiff contends that even with the video footage, which she says is extremely pixelated, many material facts remain in dispute and discovery is necessary to resolve those disputes. In support, Plaintiff provides a 56(d) Declaration, which states that transfer of the video footage is the only discovery that has occurred in this case, most discoverable materials are in Defendants' possession, and Plaintiff needs discovery to verify or disprove the representations contained in the affidavits provided by Defendants. Plaintiff also asserts that she needs to obtain and review all the documents that were available to Defendants

during the investigation of the incident and depose critical witnesses identified in the Second Amended Complaint and the IID investigatory report.

The Court declines to treat Defendants' motion as a Motion for Summary Judgment, as Plaintiff has identified in her Rule 56(d) Declaration several material factual disputes for which further discovery is necessary, including whether Plaintiff's arm was in the feed-up slot at the time Defendant Barrett kicked the sliding door shut, the severity of Plaintiff's injuries, and whether Defendants Barrett and Zies directed another inmate to submit a fraudulent pleading. The Court will therefore construe Defendants' Motion as a Motion to Dismiss.

## B. Federal Claims

This Court's jurisdiction over Plaintiff's state law claims is contingent on the presence of Plaintiff's federal claims, so the Court will first consider whether Counts IV, V, VI, and VII in the Second Amended Complaint sufficiently allege claims for relief under federal law.

### i. Excessive Force (Count IV)

In Count IV, Plaintiff alleges that Defendant Barrett used unconstitutionally excessive force when he maliciously kicked the sliding door on the feed-up slot shut on her arm. Defendants argue that Plaintiff's excessive force claim must be dismissed because Plaintiff's injuries were not severe, and, at the time of the incident, Plaintiff was resisting discipline and Defendant Barrett needed to apply force to the feed-up slot door in order to maintain security.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Whether a prison official has used excessive force depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Courts look at the need for application of force, the relationship between that need and the amount of

force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). Rather, the extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation. *Id.* If force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the "good fortune" to escape serious harm. *Id.* at 38.

As the Court already determined in its September 22, 2017 Memorandum Opinion, ECF No. 38 at 14,[7] Plaintiff has sufficiently alleged an excessive force claim against Defendant Barrett. The Second Amended Complaint alleges that, with full knowledge that Plaintiff's arm was still in the feed-up slot, Defendant Barrett "violently and repeatedly kicked" the sharp sliding door "three to five times." ECF No. 48 ¶¶ 35, 88. It alleges further that Defendant Barrett "was motivated by ill-will, hatred and evil intent and his actions were malicious, unnecessary, willful, wanton and in complete disregard for Plaintiff's rights, safety and welfare." *Id.* ¶¶ 89, 98. These facts sufficiently support a claim that Defendant Barrett maliciously caused harm to Plaintiff. Moreover, any dispute as to the severity of Plaintiff's injuries and whether Defendant's use of force was necessary to maintain discipline are questions of fact not suitable for resolution at this stage. Thus, Count IV alleges a plausible claim for relief.

### ii. Deliberate Indifference (Count V)

In Count V, Plaintiff alleges that Defendants Barrett and Schoppert were deliberately indifferent to her serious medical need when they refused to get her medical attention after her

---

[7] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

arm was caught in the feed-up slot. Defendants argue that this claim must be dismissed because Plaintiff's injury was not serious, and she did receive medical care after a short delay.

The Eighth and the Fourteenth Amendments to the United States Constitution prohibit prison officials from acting with deliberate indifference to a prisoner's serious medical needs. *See* U.S. Const. amends. VIII, XIV. A plaintiff must satisfy a two-pronged test to prevail in a medical needs case. *Goodman v. Runion*, 676 F. App'x 156, 159 (4th Cir. 2017). First, the plaintiff "must demonstrate the defendant's deliberate indifference to an objectively sufficiently serious medical need." *Id.* (internal quotation marks omitted). Second, "under the subjective prong," the plaintiff "must show that the defendant actually knew of and disregarded a substantial risk of serious injury … or that they actually knew of and ignored a … serious need for medical care." *Id.* at 159–60 (internal quotation marks omitted).

Once again, as the Court already determined in its September 22, 2017 Memorandum Opinion, ECF No. 38 at 14, Plaintiff has sufficiently alleged a deliberate indifference claim against Defendants Barrett and Schoppert. The Second Amended Complaint alleges that Plaintiff's "forearm, hand, and wrist were smashed between the feed-up slot door, the tray's lid, and the door frame, which cut off the circulation to her hand." ECF No. 48 ¶ 36. The Second Amended Complaint alleges further that despite observing Plaintiff's situation and engaging with her while she suffered, Defendant Barrett neglected to free Plaintiff's hand from the feed-up slot or provide her medical attention, *id.* ¶¶ 37–38, and Defendant Schoppert denied her request for medical attention, *id.* ¶¶ 47–48. These allegations sufficiently allege a claim that Defendants Barrett and Schoppert were deliberately indifferent to Plaintiff's medical need and had actual knowledge of that need, and any dispute as to the severity of Plaintiff's injuries or the effect of

the delay in treatment is not to be resolved at this stage. Thus, Count V alleges a plausible claim for relief.

### iii. Retaliation (Count VI)

In Count VI, Plaintiff alleges that she was retaliated against for pursuing her ARP and § 1983 claims when Defendant Barrett threatened to harm her if she did not drop her claims and Defendants Barrett and Zies used another inmate to file a fraudulent pleading to get the instant case dismissed. Defendants argue that Plaintiff's retaliation claim must be dismissed because Plaintiff has only made conclusory allegations of retaliation.

"In order to state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) [she] engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)) (internal quotation marks and punctuation omitted). The goal of the retaliation cause of action is to prevent conduct that may chill the exercise of protected First Amendment activities. *See ACLU of Md., Inc. v. Wicomico Cty. Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

Again, as the Court concluded in its September 22, 2017 Memorandum Opinion, ECF No. 38 at 16, Plaintiff has sufficiently alleged a claim of retaliation against Defendants Zies and Barrett. First, the Second Amended Complaint alleges that Plaintiff engaged in protected First Amendment conduct by filing her Complaint and ARPs. ECF No. 48 ¶ 112. The Second Amended Complaint also alleges that Defendant Barrett "threatened to beat Plaintiff to death or spray her down with mace if she did not drop her claims" and Defendants Zies and Barrett

"conspire[ed] with inmate Walter Hall to file fraudulent pleadings in this Court with the intention [of] discouraging Plaintiff of pursuing her action." *Id.* ¶¶ 115, 116. Finally, Defendant Barrett's alleged statement tying his threat to Plaintiff's claims, *id.* ¶ 115, and Defendant Zies' statement that Plaintiff "need[s] to stop filing a lot of civil claims," *id.* ¶ 116, raise plausible inferences that there is a causal relationship between Plaintiff's protected activity and Defendants' conduct. Count VI therefore sufficiently alleges that Defendants Barrett and Zies took retaliatory action in response to Plaintiff's exercise of a constitutionally protected right.[8]

### iv. Failure to Properly Train and Supervise (Count VII)

In Count VII, Plaintiff alleges that Defendants Bishop, Bohrer, and Moyer failed to properly train and supervise Defendants Barrett, Schoppert, Bishop, Nines, Borher, Zies, Zais, and Werner, which resulted in, among other things, Defendants Barrett and Schoppert failing to provide Plaintiff with necessary medical attention and Defendants Barrett and Zies using another inmate to file a fraudulent pleading. Defendants contend that this claim must be dismissed because Plaintiff has not alleged a history of widespread abuse of constitutional rights.

The doctrine of *respondeat superior* does not apply to § 1983 claims. *Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir. 1983) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). Rather, supervisory liability "is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional

---

[8] In her Opposition, Plaintiff asserts that her retaliation claim is also based on her placement in administrative segregation based on the instructions of Defendants Bishop, Nines, and Borher. ECF No. 63 at 15. The Second Amended Complaint, however, includes no claims against these three defendants in its discussion of Count VI. Even if they had been included, they would not survive this Motion to Dismiss. The only allegations with respect to these individuals is that "[o]n or about November 21, 2016, Defendant Zies informed Plaintiff that she would be placed on administrative segregation and would not be allowed on the compound pursuant to instructions from Defendants Bishop, Nines and Borher" and that this action was taken in an attempt "to force Plaintiff to retract her civil claim." ECF No. 48 ¶¶ 80, 81. Unlike her retaliation allegations against Defendants Barrett and Zeis, Plaintiff provides no facts that plausibly allege a causal connection between Plaintiff's placement in administrative segregation and her protected activities, so any retaliation claim against Defendants Bishop, Nines, and Borher would not plausibly allege a claim for relief.

14

injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)) (internal quotation marks omitted). Supervisory liability may attach where (1) a "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted). Failure to train and supervise will only give rise to § 1983 liability in situations where "there is a history of widespread abuse." *Wellington*, 717 F.2d at 936. "[T]he conduct engaged in by the supervisor's subordinates must be 'pervasive,'" and a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents … for a supervisor cannot be expected … to guard against the deliberate criminal acts of his properly training employees when he has no basis upon which to anticipate the misconduct." *Randall*, 302 F.3d at 206 (quoting *Shaw*, 13 F.3d at 799 and *Slakan*, 737 F.3d at 373); *see also Spell v. McDaniel*, 591 F. Supp. 1090, 1110 (E.D.N.C. 1984) ("[A]s to allegations of failure to train and supervise, the law in this circuit is that such failure gives rise to § 1983 liability solely in those situations where there is a history of abuse. Only then may sufficient knowledge be imputed to the supervisory personnel.").

Here, Plaintiff has not sufficiently pled a failure to train and supervise claim against Defendants Bishop, Bohrer, and Moyer. The Second Amended Complaint contains few factual allegations pertaining to these three Defendants. It alleges generally that Defendant Barrett was

15

able to harm Plaintiff and Defendants Barrett and Schoppert failed to get Plaintiff necessary medical attention "[b]ecause Defendants Bishop, Bohrer and Moyer failed to adequately train and supervise [them]," ECF No. 48 ¶ 49, and that these three defendants "refused to provide Plaintiff with the security video footage which this Court ordered to be released" and collectively decided to move Plaintiff to administrative segregation after the incident, *id.* ¶¶ 74, 80, 92. Although these factual allegations could plausibly raise an inference that Defendants Bishop, Bohrer, and Moyer knew about the specific incident involving the feed-up slot, they are not sufficient to support an inference that there was widespread abuse of constitutional rights among their subordinates. Moreover, Plaintiff has failed to allege any facts that would support a causal link between alleged deficiencies in training and supervision on the part of Defendants Bishop, Bohrer, and Moyer, and the excessive force, deliberate indifference, and retaliation injuries suffered by Plaintiff. *See Shaw*, 13 F.3d at 799 ("Causation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff."). Plaintiff has therefore not properly pled a claim of failure to train and supervise and Count VII must be dismissed.

### v. Immunity

Defendants assert that even if the Second Amended Complaint plausibly states a claim for relief, they are entitled to absolute and qualified immunity. First, Defendants are correct that they are entitled to immunity from Plaintiff's official capacity claims. A suit against a state employee in his official capacity is actually a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Under the Eleventh Amendment, states "may not be sued by private individuals in federal court," *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001), unless one of three exceptions applies: Congress abrogated the States' Eleventh

Amendment immunity, the suit is one for prospective injunctive relief, or the state has waived immunity, *Shaw v. Maryland*, Case No. ELH–18–782, 2019 WL 4447256, at *11 (D. Md. Sept. 16, 2019).

Here, Plaintiff's claims against Defendants Barrett, Schoppert, and Zeis in their official capacities are actually suits against the State of Maryland, and none of the three exceptions apply because Congress has not abrogated Eleventh Amendment immunity for § 1983 claims, *see Shaw*, 2019 WL 4447256, at *11, Plaintiff requests monetary relief, and Maryland has not waived its immunity in this proceeding. Thus, the State of Maryland cannot be sued in federal court, and the official capacity claims in Counts IV, V, and VI must be dismissed.

Plaintiff has also sued Defendants Barrett, Schoppert, and Zeis in their individual capacities, however; the individual Defendants will only be immune from suit if they are entitled to qualified immunity. Government officials are generally entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)).

As explained above, Plaintiff has sufficiently alleged that Defendants violated her First and Eighth Amendment rights. It was clearly established at the time of the alleged constitutional violations that retaliation violates the First Amendment and deliberate indifference to a medical need and excessive force violate the Eighth Amendment. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250 (2006) (retaliation); *Farmer v. Brennan*, 511 U.S. 825 (1994) (deliberate indifference); *Hudson v. McMillian*, 503 U.S. 1 (1992) (excessive force). "Moreover, this Court is mindful that

the qualified immunity issue is dependent on a fact-intensive inquiry better conducted after the parties have had the opportunity to engage in discovery." *Taylor v. Somerset Cty. Comm'rs*, Case No. RDB-16-0336, 2016 WL 3906641, at *8 (D. Md. July 19, 2016). Accordingly, at this stage of the proceedings, Defendants are not entitled to qualified immunity from Plaintiff's claims against them in their individual capacities. Thus, the excessive force, deliberate indifference, and retaliation claims alleged against Defendants Barrett, Schoppert, and Zeis in their individual capacities in Counts IV, V, and VI remain pending.

### C. State Claims

Because federal claims remain pending in this case, the Court will next consider whether the Second Amended Complaint sufficiently alleges the state common law claims in Counts I and II and the state constitutional claim in Count III.

### i. Battery and IIED (Counts I and II)

Plaintiff alleges battery against Defendant Barrett for the incident involving the feed-up slot, and she alleges IIED against Defendant Barrett for the feed-up slot incident and his alleged retaliatory threats, Defendants Barrett and Schoppert for their failure to get Plaintiff necessary medical attention, Defendants Barrett and Zies for conspiring with another inmate to get Plaintiff's case dismissed, and Defendants Bishop, Nines, and Borher for deciding that Plaintiff should be moved to administrative segregation. Defendants make no argument in their opening brief about the sufficiency of Plaintiff's claims of battery and IIED. It is not until their reply brief that Defendants argue that the battery claim must be dismissed because Plaintiff does not properly allege malice and she was contributorily negligent and that the IIED claim must be dismissed because Plaintiff does not allege what emotional distress she suffered. The Court will not consider Defendants' arguments because they were raised for the first time in the Reply and

Plaintiff has not had an opportunity to respond. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).[9] The battery and IIED claims therefore remain pending.

### ii. Excessive Force and Due Process

Count III alleges violations of Articles 16 and 24 of Maryland's Declaration of Rights against Defendants Barrett and Schoppert and is duplicative of the excessive force and deliberate indifference claims alleged in Counts IV and V. "Maryland courts often have looked to federal cases interpreting the parallel federal provision." *See Okwa v. Harper*, 360 Md. 161, 203 (2000). Thus, because Counts IV and V state plausible claims for relief under the relevant federal law, Count III states a plausible claim under state law.

### iii. Maryland Tort Claims Act

Finally, Defendants contend that even if the Second Amended Complaint is sufficient with respect to the state law claims, they must be dismissed because Plaintiff has failed to comply with the Maryland Tort Claims Act ("MTCA") and Defendants are entitled to Maryland's public official immunity. In Maryland, a plaintiff may not assert a common law or state constitutional tort claim against the State or its agencies unless she complies with the notice requirements of the MTCA, MD. CODE. ANN., STATE GOV'T § 12-101 *et seq.*; *see Barbre v. Pope*, 402 Md. 157, 173–74 (2007). The MTCA's requirements have no effect, however, on a plaintiff's claims against individual state employees. *Sykes v. Wicomico Cty.*, Case No. CCB–05–2846, 2007 WL 1073607, at *8 (D. Md. Mar. 30, 2007) (citing *Chinwuba v. Larsen*, 142 Md.

---

[9] On September 19, 2019, Plaintiff filed a Motion for Leave to File a Surreply. ECF No. 70. In her Motion, she requests that the Court not consider the new arguments raised in Defendants' reply or, alternatively, grant her leave to file a surreply. Plaintiff did not attach a proposed surreply in accordance with the local rules, so, as the Court has already stated, it will disregard the arguments Defendants make for the first time in their reply. Thus, the Motion for Leave to File Surreply is granted, in part, and denied, in part.

App. 327, 358 (Md. Ct. Spec. App. 2002)). Here, because Plaintiff has only sued individual state employees, and not the State of Maryland or its agencies, any failure to comply with MTCA's notice requirements has no effect on her state law claims.

Nonetheless, Defendants may still be entitled to immunity from suit "for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence…" *Barbre*, 402 Md. at 174; *see also* MD. CODE ANN., CTS. & JUD. PROC. § 5-522(b); MD. CODE ANN., STATE GOV'T § 12-105. As is relevant here, malice is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud…" *Lee v. Cline*, 384 Md. 245, 268 (2004) (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)) (internal quotation marks omitted).

Here, the Second Amended Complaint alleges that "Defendants were motivated by ill-will, hatred and evil intent and their actions were malicious, unnecessary, willful, wanton and in complete disregard for Plaintiff's rights, safety and welfare." ECF No. 48 ¶ 93. With respect to Defendant Barrett and Defendant Schoppert, the Second Amended Complaint alleges that Defendant Barrett knew Plaintiff's arm was in the feed-up slot and smiled after he "violently and repeatedly kicked the steel sharp slide on the feed-up slot shut on Plaintiff's forearm, hand and wrist," *id.* ¶¶ 38, 88, that he purposefully left her arm caught in the feed-up slot, *id.* ¶ 38, 97, and that both Defendant Barrett and Defendant Schoppert refused get her medical attention upon her request even though she was clearly struggling, *id.* ¶¶ 42–48. With respect to the retaliatory actions by Defendants Barrett and Zies, the Second Amended Complaint alleges that Defendant Barrett "threatened to beat Plaintiff to death or spray her down with mace if she did not drop her [civil rights] suit," *id.* ¶ 92, and Defendant Zais stated, "Oh well, [Plaintiff] need[s] to stop filing a lot of civil claims," *id.* ¶ 73. These facts are sufficient to plausibly plead that Defendants

Barrett, Schoppert, and Zeis acted with "ill-will" toward Plaintiff, so they are not entitled to any state law immunity at this stage and the state law claims remain pending against them.

Defendants Bohrer, Nines, and Bishop, however, are entitled to immunity from suit for Plaintiff's IIED claim (the only state law claim alleged against them). Plaintiff's IIED claim against these three Defendants is based solely on the allegation that they "collectively decided to move Plaintiff to administrative segregation after the assault where she would not be allowed on the compound." *Id.* ¶ 92. Plaintiff has not pled any facts that raise an inference that this decision was made with malice, so the IIED claims against Defendants Bohrer, Nines, and Bishop must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, is granted, in part, and denied, in part. Specifically, the Second Amended Complaint is dismissed to the extent that it raises federal claims against Defendants in their official capacities. Additionally, Count II is dismissed as to Defendants Bohrer, Nines, Bishop, Zais, Moyer, and Werner, and Count VII is dismissed in its entirety. Defendants Barrett, Schoppert, and Zeis are the only remaining Defendants and Counts I through VI remain pending against them. A separate Order shall issue.

Date: <u>March     6, 2020</u>                                          <u>    /s/                                                     </u>
                                                                                        GEORGE J. HAZEL
                                                                                        United States District Judge