**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **AMBER MAREE CANTER,** | * | |
| **(F/K/A CHARLES CANTER)** | | |
| | | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: GJH-16-2545** |
| | * | |
| **RICHARD SCHOPPERT,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Amber Maree Canter brought this civil action against officers and other personnel at the North Branch Correctional Facility ("NCBF") alleging battery, intentional infliction of emotional distress, excessive force and violation of due process under the Maryland Declaration of Rights, and excessive force, deliberate indifference, retaliation, and failure to properly train and supervise pursuant to 42 U.S.C. § 1983. ECF No. 48. Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 121.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion for Summary Judgment, ECF No. 121, is granted, in part, and denied, in part.

---

[1] Also pending before the Court is Defendants' Motion to Strike Entry of Appearance, ECF No. 129, and Plaintiff's Consent Motion to Modify Scheduling Order, ECF No. 132. These Motions are granted.

I.      **BACKGROUND**[2]

    A.  **Factual Background**

The background facts of this action were fully set forth in this Court's previous

Memorandum Opinion, ECF No.76 at 2–4,[3] but the Court will restate them here. Plaintiff is a

transgender woman who, during the relevant period, was in the custody of the Maryland

Department of Public Safety and Correctional Services and housed at NBCF, a facility for male

inmates, in Cumberland, Maryland. ECF No. 48 ¶ 1; ECF No. 125-1 ¶¶ 2–3 (Affidavit of Amber

Maree Canter). On June 18, 2016, at 4:00 a.m., Plaintiff received her breakfast tray, but she

noticed that it was not compliant with her medical diet of 2,400 calories per day. *Id.* ¶ 21; ECF

No. 125-1 ¶ 4. She asked Correctional Officers Crowe and Hill to call the dietary officer, but

they declined. *Id.* ¶¶ 22–23; ECF No. 125-1 ¶¶ 5–6. Plaintiff then placed her tray into the feed-up

slot to prevent it from closing, in a "desperate attempt" to have her medical needs addressed, and

Officer Crowe ordered her to remove the tray. *Id.* ¶¶ 24–25; ECF No. 125-1 ¶¶ 7–8. She then

demanded to see the Sergeant on duty, but Officer Crowe responded that a Sergeant "ain't gonna

come down." *Id.* ¶¶ 26–27; ECF No. 125-1 ¶¶ 8–9.

Defendant Correctional Officer II Brian Barrett then dragged a security shield toward

Plaintiff's cell. *Id.* ¶ 31; ECF No. 125-1 ¶ 12. While Plaintiff's tray and hand were still in the

feed-up slot, Defendant Barrett latched the shield onto the right side of the cell door, but he could

not latch the shield to the left side because the sliding door for the feed-up slot was too far open.

*Id.* ¶ 32; ECF No. 125-1 ¶ 14. He became frustrated and angry and started to kick the shield. *Id.* ¶

---

[2] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff as the non-movant.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

33; ECF No. 125-1 ¶ 15. After he told Plaintiff to move her hand and tray and Plaintiff refused, Officer Barrett kicked the sliding door with extreme force several times, and Plaintiff's forearm, hand, and wrist were smashed between the feed-up slot door, tray, and door frame. *Id.* ¶¶ 34–36; ECF No. 125-1 ¶¶ 16–18. Plaintiff alleges that she has experienced severe pain as a result of Officer Barrett kicking the slider with extreme force, in addition to experiencing "lasting humiliation and permanent mental anguish" including symptoms of post-traumatic stress disorder. ECF No. 125-1 ¶ 19.

With her arm still caught in the feed-up slot, Plaintiff asked to see a lieutenant. ECF No. 48 ¶ 37; ECF No. 125-1 ¶ 20. Defendant Barrett responded, "you shouldn't have had your hand in the slot," and he smiled and walked away. *Id.* ¶ 38; ECF No. 125-1 ¶ 21. Plaintiff's left arm remained stuck for the next twenty minutes. *Id.* ¶ 21. Officer Hill then arrived and learned from inmate Derrick Dirton that "Barrett smashed Canter's hand in the slot, [she] needs medical attention," but Officer Hill was unable to open the sliding door to free Plaintiff's arm. *Id.* ¶¶ 39–41; ECF No. 125-1 ¶¶ 22–24; ECF No. 125-2 at 6–7 (Affidavit of Derrick D. Dirton). About thirty minutes later, Defendant Sergeant Richard Schoppert, Defendant Barrett, and Officers Porter and Crowe arrived at Plaintiff's cell; Defendant Barrett eventually opened the sliding door and Plaintiff removed her hand. *Id.* ¶¶ 42–43; ECF No. 125-1 ¶¶ 25–26. She requested medical attention, but Defendant Schoppert denied the request. *Id.* ¶¶ 47–48; ECF No. 125-1 ¶¶ 29–30.

At 7:00 a.m., Officer Timothy Marchanke obtained a statement from Plaintiff regarding the incident, and that statement made its way to Lieutenant Bradley, who ordered that pictures be taken of Plaintiff's injuries and that she be seen by a registered nurse. *Id.* ¶¶ 50–51; ECF No. 125-1 ¶¶ 31–32. Nurse Amy examined Plaintiff's arm, determined that there was internal and

external bruising, and provided Plaintiff with an Ace bandage. *Id.* ¶¶ 53, 54; ECF No. 125-1 ¶¶ 34–35.

On June 18, 2016, Plaintiff filed an Administrative Remedy Procedure ("ARP") complaint about the incident. *Id.* ¶ 82; ECF No. 125-1 ¶ 36. Four days later, Defendant Correctional Officer II Jared Zais[4] came to Plaintiff's cell to ask what could be done about the 16complaint. *Id.* ¶ 56; ECF No. 125-1 ¶ 38. Plaintiff said there was nothing that could be done because she wanted the officers involved to be charged with assault and neglect. *Id.* ¶ 57; ECF No. 125-1 ¶ 39. Defendant Zais responded that he would process the ARP. *Id.* On that same day, however, the ARP was dismissed because the Internal Investigations Unit ("IID") was investigating the incident. *Id.* ¶ 58; ECF No. 125-1 ¶ 40. On June 25, 2016, Plaintiff was interviewed by IID Sergeant Chris Burton; she provided affidavits from two inmates who observed the assault, as well as a copy of the ARP, sick call slips, and request slips, and she asked Sergeant Burton to review the surveillance video of the incident. *Id.* ¶¶ 60–62; ECF No. 125-1 ¶¶ 42–44. At the conclusion of the IID investigation, Sergeant Burton stated that he would present the case to the Allegany County State's Attorney's Office and that office would decide if criminal charges would be filed. *Id.* ¶ 66; ECF No. 125-1 ¶ 48.

Since filing her Complaint in the instant case, Plaintiff has been subject to various actions that she characterizes as retaliatory. *Id.* ¶ 69. For example, Defendant Case Manager II Charlotte Zies and Defendant Barrett arranged for another inmate, Walter Hall, to sabotage this action by filing a fraudulent voluntary dismissal of the case. *Id.* ¶ 70–73; ECF No. 125-1 ¶¶ 53–58. When

---

[4] As noted in the Court's previous Memorandum Opinion, ECF No. 76 at 3 n.4, in the Second Amended Complaint, the individual who came to Plaintiff's cell is referred to as "Correctional Sergeant Zies." This is likely a typo. Charlotte Zies, the Case Manager Specialist II, and Jared Zais, Correctional Officer II, are both listed in the Complaint, ECF No. 48 ¶¶ 7, 8, but there is no "Correctional Sergeant Zies." Given that Defendant Zais "was responsible for operations of the Administrative Grievance Department," *id.* ¶ 8, the Court assumes that this is who Plaintiff is referring to in this portion of the Second Amended Complaint and in her affidavit, ECF No. 125-1.

Plaintiff informed Defendant Zies of the fraudulent filing, she responded, "Oh well, you need to stop filing a lot of civil claims." *Id.* ¶ 73; ECF No. 125-1 ¶ 59. Defendant Barrett also threatened to beat Plaintiff to death or spray her with mace if she did not "back off" her civil and criminal claims. *Id.* ¶ 74; ECF No. 125-1 ¶ 60. On November 21, 2016, Defendants Bishop, Nines, and Borher directed that Plaintiff be placed on administrative segregation in order to force her to retract her claims. *Id.* ¶ 80–81; ECF No. 125-1 ¶ 65. Plaintiff filed additional ARP complaints with respect to the alleged retaliation on August 5, August 7, August 9, August 15, August 20, August 21, August 30, and September 14 of 2016. *Id.* ¶ 85; ECF No. 125-1 ¶ 64. All were denied, and all were appealed and subsequently dismissed. *Id.*

## B. Procedural Background

The Court set out the complete procedural posture of this case in its previous Memorandum Opinion, ECF No. 76 at 4–6, therefore the Court will repeat only the procedural history relevant to the pending Motion. On March 6, 2020, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, *id.* Specifically, the Court dismissed all claims against Defendants Bohrer, Nines, Bishop, Zais, Moyer, and Werner and dismissed all federal claims against Defendants in their official capacities. ECF No. 77 ¶ 4. Plaintiff's claims of battery against Defendant Barrett ("Count I"), intentional infliction of emotional distress ("IIED") against Defendants Barrett, Schoppert, Zies ("Count II"), excessive force and due process in violation of the Maryland Declaration of Rights against Defendants Barrett and Schoppert ("Count III"), excessive force in violation of the Eighth and Fourteenth Amendments against Defendant Barrett ("Count IV"), deliberate indifference against Defendants Barrett and Schoppert ("Count V"), retaliation against Defendants Barrett and Zies ("Count VI"), remained pending. *Id.* In its Memorandum Opinion,

the Court explained that it declined to treat Defendants' Motion as a Motion for Summary

Judgment because Plaintiff identified, in her Rule 56(d) Declaration, several material fact

disputes requiring further discovery, including "whether Plaintiff's arm was in the feed-up slot at

the time Defendant Barrett kicked the sliding door shut, the severity of Plaintiff's injuries, and

whether Defendants Barrett and Zies directed another inmate to submit a fraudulent pleading."

ECF No. 76 at 10.

On November 03, 2021, Defendants filed the now pending Motion for Summary

Judgment, ECF No. 121, and on December 3, 2021, Plaintiffs opposed the Motion, ECF No. 125.

Defendants did not reply.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . .,

admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of demonstrating that no

genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282,

1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the

nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts

showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is

one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond

Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence

6

favoring the nonmoving party exists for the trier of fact to return a verdict for that party.

*Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of

material fact through mere speculation or the building of one inference upon another." *Beale v.*

*Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may rely only on facts supported in the

record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent

'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys*

*Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted). When ruling on a motion for

summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of

discovery, *see, e.g.*, *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 286

(2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be

denied when the nonmovant has not had the opportunity to discover information that is essential

to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and

quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of

showing how discovery could possibly create a genuine issue of material fact sufficient to

survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-*

*Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

## III.   DISCUSSION

Plaintiff's Second Amended Complaint alleges claims for battery, IIED, and violating

Maryland's Declaration of Rights, the Eight and Fourteenth Amendments, and the First and

Fourteenth Amendments, ECF No. 48 ¶¶ 87–121. Defendants focus their Motion on Counts I–II

and VI, along with their argument that they are entitled to judgment because Plaintiff's claims

are barred by qualified immunity, *see* ECF No. 121.

### A. Battery (Count I)

Under Maryland law,[5] battery is defined as the "unpermitted application of trauma by one

person upon the body of another person." *McQuiggan v. Boy Scouts of Am.*, 73 Md. App. 705,

714, 536 A.2d 137, 141 (1988). Battery requires an intent by the actor "'to bring about a harmful

or offensive contact . . . [It is] confined to intentional invasions of the interests in freedom from

harmful or offensive contact'" rather than accidental or inadvertent contact. *Janelsins v. Button*,

102 Md. App. 30, 35, 648 A.2d 1039, 1042 (Md. Ct. Spec. App. 1994) (citation omitted). In a

claim for battery, the element of intent "'requires not a specific desire to bring about a certain

result, but rather a general intent to unlawfully invade another's physical well-being[.]'" *Beall v.*

*Holloway-Johnson*, 446 Md. 48, 67, 130 A.3d 406, 417 (2016) (quoting *Nelson v. Carroll*, 735

A.2d 1096, 1099 (Md. 1999)). Furthermore, "intent is a subjective element usually left for the

jury's determination." *Id.* In Count I, Plaintiff alleges that Defendant Barrett battered her and

created fear and apprehension by unlawfully touching Plaintiff with excessive force, specifically

when he "violently and repeatedly kicked the steel sharp slider on the feed-up slot shut on

Plaintiff's forearm, hand and wrist," which caused internal and external bruising, ECF No. 48 ¶

88.

---

[5] As a federal court exercising supplemental jurisdiction, this Court must apply the forum state's choice-of-law rules. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (1997). Under that rule, the court applies the law of the state "where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). The events at issue here took place in Maryland. Thus, Maryland law applies to the state causes of action alleged in Counts I and II.

Defendants, as the party moving for summary judgment, bear the burden of demonstrating that no genuine dispute exists as to any material facts. *See Pulliam Inv. Co.*, 810 F.2d at 1286. At this stage, Defendants have failed to meet this burden. They contend, based only on the Declaration of Defendant Barrett, ECF No. 57-3 ¶ 9, that "Plaintiff's hand was not trapped in the security slot," ECF No. 121-1 at 4, but this does nothing more than to raise a dispute regarding Plaintiff's claim to the contrary. The Court, therefore, drawing all justifiable inferences in Plaintiff's favor, *Anderson*, 477 U.S. at 255, finds that there is still a genuine dispute as to whether Plaintiff's hand was in the feed-up slot at the time Defendant Barrett kicked the sliding door.[6]

Moreover, this conclusion is reinforced by Plaintiff's Affidavit, ECF No. 125-1, and Plaintiff's Counsel's Rule 56(d) Declaration, ECF No. 125-3, that discovery is ongoing, Defendants have not completed their production of documents, and that Plaintiff has not had the opportunity to depose critical witnesses, including Defendant Barrett, about their statements and versions of events, including whether Plaintiff's arm was in the feed-up slot at the time Defendant Barrett kicked it closed. ECF No. 125-1 ¶¶ 70a, 72–73; ECF No. 125-3 ¶¶ 8, 13a, 15–16. As discussed above, *see supra* § II, Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano,* 743 F.3d at 931 (internal citation and quotation marks omitted). However, to obtain Rule 56(d) relief, the non-moving party must show how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter*, 792 F.3d at 411

---

[6] Defendant argues that Plaintiff must demonstrate malice in order to succeed on its claim. Assuming Defendant is correct, at this juncture, there remains a dispute regarding the facts that could support a finding of malice, particularly in light of Plaintiff's 56(d) Declaration.

(internal citation and quotation marks omitted). "Generally, such an attempt is made through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through discovery to properly defeat summary judgment." *Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015). Yet, where "'the nonmoving party's objections before the district court served as the functional equivalent,' a Rule 56(d) affidavit may not be necessary." *Id.* (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)).

Here, Plaintiff's counsel has filed a Rule 56(d) Declaration, ECF No. 125-3, and Plaintiff's affidavit, ECF No. 125-1, is the equivalent of a Rule 56(d) affidavit because it provides reasonable notification and explanation for why more discovery is necessary and what else Plaintiff intends to discover that is not yet in the record. *Id.* Therefore, summary judgment as to Count I is inappropriate under Federal Rule of Civil Procedure 56(d). *See* Pisano, 743 F.3d at 931 ("A court should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant.").

## B. IIED (Count II)

To state a claim for IIED under Maryland law, Plaintiff must allege that: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Borchers v. Hyrchuk*, 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999) (citing *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977)). In Maryland, an IIED claim is "rarely viable," *id.*, and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves,'" *Lee v. Queen Anne's Cty. Off. of Sheriff*, No. 13-cv-672-RDB, 2014 WL 476233,

at *16 (D. Md. Feb. 5, 2014) (quoting *McDaniel v. Maryland*, No. 10-cv-00189-RDB, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010)).

In Count II, Plaintiff alleges IIED against Defendant Barrett for the feed-up slot incident and his alleged retaliatory threats, Defendants Barrett and Schoppert for their failure to get Plaintiff necessary medical attention, and Defendants Barrett and Zies for conspiring with another inmate to get Plaintiff's case dismissed. ECF No. 48 ¶¶ 91–94. She alleges that as a direct and proximate result of Defendants' actions, she suffered "permanent injury including, but not limited to severe pain, bruising, humiliation, and mental anguish." *Id.* ¶ 94. In its Motion, Defendants argue that because "Plaintiff does not address at all in the Second Amended Complaint what emotional distress she suffered . . . The Court cannot find that the emotional distress was severe when there was no description at all of the distress or how the distress affected the Plaintiff." ECF No. 121-1 at 8–9.

Defendants are correct. Even accepting Plaintiff's allegations as true, Plaintiff's allegations are not sufficient to establish severe emotional distress for IIED purposes. *See Griffin v. Clark*, No. 11-cv-2461-RWT, 2012 WL 4341677, at *3 (D. Md. Sept. 20, 2012) (dismissing IIED claim and noting that "Maryland courts have found that mere embarrassment, public humiliation, feelings of inferiority, or shame do not rise to the level of severe emotional distress."); *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing IIED claim where plaintiff did "not allege that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress.").

Therefore, Defendants Motion for Summary Judgment is granted as to Count II, Plaintiff's IIED claim.

### C.  Retaliation (VI)

To state a retaliation claim, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). A plaintiff must also "demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected [act]." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (citation omitted); *see also ACLU of Md., Inc. v. Wicomico Cty, Md*., 999 F.2d 780, 785 (4th Cir. 1993) ("a showing of adversity is essential to any retaliation claim."). "Third, the plaintiff must demonstrate that a causal relationship exists between its [protected act] and the defendant's retaliatory action." *Id.* (citation omitted).

In Count VI, Plaintiff alleges retaliation for pursuing her ARP and § 1983 claims when Defendant Barrett threatened to harm her if she did not drop her claims and Defendants Barrett and Zies used another inmate to file a fraudulent pleading to get the instant case dismissed. ECF No. 48 ¶¶ 112–121; ECF No. 125-1 ¶¶ 58, 60. Defendants argue that "Plaintiff offers absolutely no basis, foundation or facts to support her claims" and cite to Defendant Zies' interrogatory response in which she states that she does not have "any knowledge of who was involved in dismissing Plaintiff's claims" and that she "cannot recall any personal interactions" with Walter Hall. ECF No. 121-2 at 6–7. Therefore, they argue that Defendants Zies and Barrett are entitled to summary judgment on the retaliation claims.

Plaintiff, again, through her affidavit and her counsel's Rule 56(d) motion, indicates that additional discovery is needed because Defendants have not yet produced documents relating to their investigation into the dismissal of her claims and because she requires certain depositions of Defendants, those who submitted affidavits in connection with the case, "and inmate Walter

Hall, who was instrumental in obtaining the earlier dismissal of the case." ECF No. 125-1 ¶¶ 68–70c–d, 73–74; ECF No. 125-3 ¶¶ 8–10, 13c–e, 16–17. For the reasons previously explained, *see supra* § III.A & B, summary judgment as to Count VI is inappropriate and will also be denied.

### D. Qualified Immunity

Qualified immunity shields government officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N. Carolina*, 789 F.3d 389, 401 (4th Cir. 2015) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (internal quotations omitted)). "Regarding whether a right was clearly established, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Henry*, 652 F.3d at 534).

Defendants argue that they are entitled to summary judgment on the basis of qualified immunity because "their actions can reasonably be construed as happening within 'grey areas,'" ECF No. 121-1 at 11 (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Such a conclusory argument is insufficient to support Defendants' claim that they are entitled to judgment as a matter of law.

Moreover, as Plaintiff notes, this Court previously cautioned that this issue of qualified immunity is "dependent on a fact intensive inquiry better conducted after the parties have had the opportunity to engage in discovery." ECF No. 76 at 17–18 (quoting *Taylor v. Somerset Cty. Comm'rs, Case*, No. 16-cv-0336-RDB, 2016 WL 3906641, at *8 (D. Md. July 19, 2016)).

Therefore, at this stage, with discovery still ongoing, it would be premature to conduct the "fact-intensive inquiry" required to resolve the qualified immunity issue, as contemplated in

13

*Taylor*, *see* 2016 WL 3906641, at *8. Accordingly, at this time, Defendants are not entitled to qualified immunity.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 121, is granted in part and denied in part. A separate Order shall issue.

Date: <u>March    7, 2022</u>                                                      <u>    /s/                                          </u>
                                                                                                         GEORGE J. HAZEL
                                                                                                         United States District Judge